May it please the court, counsel. My name is Lawrence Omino and I represent Shante Zanders in this appeal. This is a direct appeal after a jury found Mr. Zanders guilty of residential burglary. I have raised two issues in this appeal. In argument one, I asked this court to reverse Mr. Zanders' conviction because the trial court erred by denying his motion to suppress evidence when the arresting officers lacked probable cause to arrest him. The evidence presented at the hearing on Mr. Zanders' motion to suppress evidence showed that Mr. Zanders was immediately arrested without probable cause when Officer Patrick Bennett, who was accompanied by four other officers, ordered Mr. Zanders out of his car and handcuffed him. At the suppression hearing, Officer Bennett testified that at 11.22 a.m. he received a dispatch regarding a possible residential burglary at a home on 6th Street. The dispatcher relayed to Bennett that a caller, Tamara Jones, stated that she was walking by her mother's house when she saw a black male wearing a white t-shirt and white gloves exit her mother's home carrying a flat screen TV. Jones yelled at the man who then dropped the TV and entered a dark-colored two-door car and drove away. Two or three minutes later, Officer Bennett spotted a dark-colored two-door vehicle that he believed matched the description provided by the dispatcher. Bennett drove towards the car. The car pulled off to the side of the road and Bennett pulled over and was facing head-on with the other parked vehicle. Mr. Zanders was the driver of the vehicle. Bennett testified that the man opened the door in a hurried manner as if to step out of the vehicle and run away. Bennett got out of his car, drew his weapon, and ordered Mr. Zanders to stay in his car. Mr. Zanders complied with Bennett's command and remained seated in the car. Bennett returned to his squad car and informed the dispatcher that he was making a felony stop, which Bennett explained means drawing his weapon. Thirty seconds to a minute later, four other police officers arrived at the scene. Bennett ordered Mr. Zanders out of the car and an assisting officer immediately placed Mr. Zanders in handcuffs. No information was provided to Bennett that the suspect was armed or dangerous. I submit here that Mr. Zanders was arrested without probable cause at the time he was handcuffed in the presence of five police officers after Bennett had withdrawn his gun. The State argued below and argued here that this was a terror investigation based upon a reasonable suspicion. However, the police actions far exceeded the proper limited scope of a terror investigation and was an arrest. The use of force and show of authority by the officers made this encounter an arrest before any preliminary terror investigation occurred. The use of force by the officers here was of the kind recognized by courts as associated with an arrest. First, Officer Bennett withdrew his gun. Secondly, there was the presence of five police officers. And third, and perhaps most importantly, Mr. Zanders was immediately handcuffed when he stepped out of the car after being ordered to do so by Officer Bennett. Handcuffing is a type of conduct that converts a terror investigation into an arrest because it heightens the degree of intrusion of a citizen that is generally not part of a terror investigation. Thus, the use of force and show of authority here went beyond the proper scope of a terror investigation and was an arrest. Furthermore, this arrest was made without probable cause. Probable cause to arrest occurs when the circumstances known to the officer at the time wants a reasonable person to believe a crime has been committed and the suspect has committed the crime. The facts known to Officer Bennett at the time of the arrest, the handcuffing, were that there was a possible residential burglary and the suspect was a black male wearing a white t-shirt driving a dark-colored two-door car. He was driving in the vicinity of the burglarized home. These facts were insufficient to establish probable cause. First, the generalized description of the suspect was not particularized at all. There was no mention of height, weight, hair, any facial hair, complexion. This description could have matched many people in the community. Moreover, Mr. Zanders' presence in the vicinity of a crime does not establish probable cause to arrest. Thus, the facts known to the officers before the arrest were not supported by probable cause. Because the police arrested Mr. Zanders without probable cause, all the evidence from the illegal arrest must be suppressed under the fear of the poisonous tree doctrine. This evidence includes the white gloves that were found inside the vehicle, the subsequent show-off identification of Mr. Zanders, which occurred at the scene where the arrest occurred, when Tamara Jones was transported to the scene by police officers where she identified Mr. Jones. Because all of this flow from the illegal arrest that must be suppressed is fruit of the poisonous tree doctrine. I ask this court to reverse Mr. Zanders' conviction and remand the case for a new trial. In my second argument, where the trial court failed to properly question the prospective jurors during void year in compliance with Supreme Court 431B, and the evidence was closely balanced for purposes of the plain error rule, Mr. Zanders must receive a new trial. As we all know, Rule 431B requires the trial court during void year to inform the prospective jurors about four fundamental principles of Illinois law. Here, the trial court referenced these principles in some form, but failed to comply with the other requirements of the rule, namely that the trial court asked the prospective jurors if they understood and accepted the four principles. The trial court here did not do that. Illinois Supreme Court has made clear that the trial court's failure to specifically ask the veneer if they understood and accepted the four principles is error. The trial court here failed to comply with Supreme Court Rule 431B. Counsel, I know you argued that based on your first argument that the white gloves, for example, that should be suppressed, that evidence. But if it's not suppressed, you've got the white gloves and you've got the ID, then how is this a closely balanced case? Well, Your Honor, the gloves obviously were found after the arrest occurred. And that is part of perhaps in a reasonable doubt argument, that would be part of factors to consider whether the evidence proved beyond a reasonable doubt. But here we only have to prove, show that the evidence was closely balanced. And it was closely balanced for some of the reasons that I mentioned before. One, the identification was lacking. But secondly, even if we said, if we assumed that the gloves and the identification placed Mr. Zanders near the home that the television set, it did not establish, the evidence did not establish that Mr. Zanders entered the home, which is an essential element of the offense of residential burglary. The evidence pertaining to that was based upon Tamara Jones' identification, which I have already argued was suspect. She didn't see the suspect's face, based her identification on the fact that he was a black man wearing a white T-shirt. There was no fibers or fingerprints or DNA or anything that established that Mr. Zanders was in the house, ever in the house. And if you look closely at Tamara Jones' trial testimony, she specifically says that she did not see Mr. Zanders come out of the door. On cross-examination by defense counsel, we asked, when did you first see the defendant with the television set? She said, behind the house, walking from behind the house in the grass behind the house. So there is insufficient evidence that Mr. Zanders entered the home, was in the home, which is an essential element of residential burglary. Thank you. Thank you. Counsel? May it please the court, good afternoon, your honors, counsel. Karen Wilson-Wengler on behalf of the state. As is apparent from the brief, this appeal raises several nuanced issues. However, the state would like to focus on the suppression issue today and would like to address three points. Those points specifically being, first, that though defendant did not argue or raise this argument in oral argument, in defendant's reply brief, he raised an argument that the officer Bennett lacked reasonable suspicion. However, that argument has been forfeited and should be, this court should therefore decline to address that issue on appeal. Second, officer Bennett's actions did not exceed the permissible bounds of an investigative stop and the stop therefore did not amount to a de facto arrest. And finally, the record of the suppression hearing is insufficient to ascertain at what point defendant was actually arrested. To my first point, defendant raises for the first time in his reply brief an argument that officer Bennett lacked reasonable suspicion to stop him. Defendant states that this argument grows out of and is responsive to the state's argument. However, this is not the case. In its opening brief, the state acknowledged the fact that defendant conceded that officer Bennett had reasonable suspicion at three points in his opening brief, those pages being 8, 16, and 17. Defendant's new argument that officer Bennett lacked reasonable suspicion does not grow out of or respond to that acknowledgement. Instead, it is an argument to backtrack the concession and raise a new argument that could have or should have been raised, if at all, in the opening brief. Moreover, the issue of reasonable suspicion was not raised pre-trial, during trial, or post-trial and is therefore procedurally forfeited. This Court should therefore decline to address the merits of defendant's reasonable suspicion argument on review. Before addressing the second and third points, a review of the standard of review and burdens of proof and production on a suppression motion are in order. Pursuant to People v. Chambers, a trial court's decision on a motion to suppress is reviewed pursuant to a two-part standard. The court's factual findings will be reviewed pursuant to the manifest weight of the evidence standard of review, whereas the court's ultimate ruling will be reviewed de novo. In People v. Biaggi, this Court noted that on a motion to suppress, defendant at all times bears the burden of proof. And defendant likewise bears the initial burden of production and must make a prima facie showing of an illegal search or seizure before the burden shifts to the State to prove the legality of the search or seizure. Which brings me to my second and third points. The evidence of record at the suppression hearing is not indicative of an illegal arrest, and defendant failed to meet his burden of production at the suppression hearing. An investigatory stop and arrest can be thought of as two ends of a sliding scale. On the one end, you have the investigative stop, which must be supported by reasonable suspicion, whereas on the other end, you have arrest, which must be supported by probable cause. Defendant's arguments on appeal require us to ascertain at what point during the encounter the stop proceeded from the investigative stop into the arrest portion of the scale. Now because the defendant is seized under either scenario and is not free to leave, whether it's an investigative stop or an arrest, the proper focus on determining at what point the defendant was arrested is on the nature and scope of the investigation and the length of time for which the defendant has been detained. However, at the suppression hearing, defendant objected to any testimony relating to the nature and scope of the investigation or the time for which defendant was detained. And this lack of evidence relating to those determinative factors prevents this court and the trial court below for that matter from determining at what point the stop escalated into an arrest. Which brings me to my final point, that the evidence of record, the evidence presented at the suppression hearing does not necessarily indicate a de facto arrest. Defendant's argument focuses on two factors, the fact that Officer Bennett initially drew his weapon and the fact that the defendant was subsequently placed in handcuffs. And while these two factors may sometimes be indicative of an arrest, they do not necessarily amount to an arrest. Illinois courts have held in cases like People v. Paskins, People v. Martin, and People v. Bouchard, that analogous scenarios wherein a defendant is initially held at gunpoint until backup can arrive and then subsequently placed in handcuffs, does not necessarily escalate a permissible investigatory stop into an arrest. Instead, those courts turn their focus to the nature and extent of the investigation and the time for which the defendant had been detained prior to the ultimate arrest. Here we have no evidence relating to those factors, meaning that defendant failed in his burden of production and ultimately his burden of proof at the suppression hearing. And the court therefore properly denied defendant's motion to suppress at the suppression hearing, or subsequently. Seeing as I have time, I will briefly address the second issue raised by defendant in this appeal, which relates to the Rule 431 alleged error. In People v. Wallace, this court held that exact tracking of the language of Rule 431 is not required for compliance with the rule. The trial court below asked the potential jurors whether they had an issue with or would have, excuse me, the trial court asked the prospective jurors whether they had disagreement with the four zero principles and then asked them to affirm that they would apply those principles as explained. And although that particular language does not exactly track the language of 431, it fulfills the purpose of Rule 431, which is to ascertain whether the veneer understands the principles and accepts those principles. The trial court asked the veneer to affirm whether they would apply the principles as explained to them and gave them the opportunity to ask questions or express disagreement. And the trial court therefore substantially complied with the rule. And if the court has no questions, the State will rest on the remaining issues in the brief. I don't believe we do. Thank you, Your Honors. Counsel? Your Honor, without any of the, I don't have a reasonable suspicion being forfeited, and that there was ambiguity about when the arrest occurred first, in my brief I argued, as did the defense counsel below, that this was an arrest right from the beginning, right from the handcuffing. The handcuffing transformed any terror investigation into an arrest. So then if we look at whether this was a proper terror investigation, I submit in my reply brief in response to the State that the evidence did not even establish a reasonable suspicion. Based upon the fact that the identification of the black man with the white T-shirt was insufficient. However, if we look at another point the counsel made about what point an arrest, what point a terror stop becomes an arrest, I have been ambiguous, or I'm ambiguous here, that it was an arrest right from the time that Mr. Zanders was handcuffed, right from the time he was handcuffed when he got out of the car. And there was, therefore, there was no ambiguity about what the argument is here. He was handcuffed because he was handcuffed with an officer drill gun and there were five officers. Now, counsel also argued that, in her brief and then briefly here, that there is at times that handcuffing is a proper and necessary restraint to foster the safety of the police officers. Here we have no such safety concern for the officers. First, there was no, Officer Bennett testified that there was, he received no report that the suspect was armed or dangerous. There were five police officers there. Bennett had drawn his gun. This area, this arrest occurred not in an isolated area where the officers were vulnerable, but at 1130 in the morning in a residential area. So the cases cited by the state that argue that handcuffing doesn't automatically transform a terror investigation into an arrest are not applicable here because those cases all involve some safety concern to the officer that required handcuffing, and those concerns are not present here. Again, looking at whether there was, even if there was a reasonable suspicion for a terror investigation, counsel suggests that the record was incomplete to show whether the officer exceeded the scope and the length of the terror investigation because defense counsel objected to any evidence that occurred subsequent to the handcuffing. Well, if you look at the scope and duration of this purported terror investigation, it became an arrest when the officer exceeded the scope of a proper terror investigation and handcuffed Mr. Zanders. So there is enough, and the record does show that the officer exceeded the scope of a proper terror investigation by immediately handcuffing Mr. Zanders. With respect to the second issue regarding the trial court's failure to comply with 431B, the state relies on a Fifth District case, People v. Wallace, to say that the trial judge is not required to specifically ask whether the jury understood and accepted these principles. Wallace predated the subsequent Illinois Supreme Court cases in People v. Wilmington, People v. Thompson, People v. Belknap. They're all set forth in my reply brief. When the Supreme Court did away with that, the analysis in Wallace, and requires now specifically that the trial court ask if the prospective jurors accept and understood the 431B principles. And if the court does not comply with that requirement, then the trial court did not comply with Supreme Court Rule 431B, and that is error. For both arguments one and two, I ask this court to reverse Mr. Zanders' conviction. Thank you. Thank you, Your Honor. We appreciate the briefs and arguments of counsel. This is a case under advisement. There are no further cases.